UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LEO H.,

                Plaintiff,

   -v-

ANDREW SAUL
Commissioner of Social Security,

                Defendant.

1:19-CV-01185-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15).

Plaintiff Leo H.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 12) is denied and defendant's motion (Dkt. No. 13) is granted.

## BACKGROUND[2]

Plaintiff protectively filed applications for DIB and SSI on June 15, 2011 alleging disability since April 19, 2011 due to congestive heart failure, atrial fibrillation, palpitations,

---

[1] In accordance with the District's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, plaintiff is identified solely by first name and last initial.

[2] The Court presumes the parties' familiarity with the plaintiff's medical history, which is summarized in the moving papers.

shortness of breath, irregular heart rate/erratic, heart murmur, unable to read and write, and no right ear drum. (*See* Tr. 285-91, 303-06, 348).[3] Plaintiff's DIB application was denied after a finding that he did not meet the insured status as required under Title II of the Act to qualify for DIB, and plaintiff did not appeal this decision. (Tr. 247-49). Plaintiff's SSI application was initially denied on October 19, 2011. (Tr. 139). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Donald T. McDougall on January 28, 2013, where plaintiff appeared with counsel. (Tr. 53-91). On March 15, 2013, ALJ McDougall issued a decision that plaintiff was not disabled under the Act. (Tr. 146-65). Plaintiff sought review of that decision by the Appeals Council, which the Appeals Council granted on July 16, 2014, thereby vacating the prior decision and remanding back to ALJ McDougall. (Tr. 166-68).

A second hearing was held before ALJ McDougall on January 6, 2015, where plaintiff appeared with counsel. (Tr. 92-138). On June 26, 2015, ALJ McDougall found again that plaintiff was not disabled under the Act. (Tr. 15-41). Plaintiff sought review of that decision by the Appeals Council and his request was denied. (Tr. 1-6). Plaintiff then appealed the Commissioner's final decision to this District Court and a decision was entered on November 17, 2017 remanding the case for further administrative proceedings. See *[Leo H.] v. Berryhill*, 16-CV-892, 2017 U.S. Dist. LEXIS 195410 (W.D.N.Y. Oct. 24, 2017), *adopted by* 2017 U.S. Dist. LEXIS 194592 (W.D.N.Y. Nov. 27, 2017). (Tr. 1784-1801). Accordingly, on March 6, 2018, the Appeals Council vacated the unfavorable decision, remanded the case, and directed the assignment of the case to a new ALJ. (Tr. 1803-08).

---

[3] References to "Tr." are to the administrative record in this case.

A new hearing was held before ALJ Bryce Baird on April 3, 2019. (Tr. 1362-1444). ALJ Baird heard testimony from plaintiff, who was represented by counsel, as well as from Peter Schosheim, M.D., an impartial medical expert ("ME"), and Jay Steinbrenner, an impartial vocational expert ("VE"). (*Id.*). On May 8, 2019, ALJ Baird issued a partially favorable decision that plaintiff was not disabled under the Act prior to January 1, 2017 but became disabled on that date and continued to be disabled through the date of the decision. (Tr. 1326-48). Plaintiff then filed the instant lawsuit.

Born on April 27, 1967, plaintiff was 43 years old on the alleged disability onset date and 51 years old on the date of the April 3, 2019 hearing. (Tr. 285, 1396). Plaintiff is able to communicate in English, has a limited 8th grade level special education, and previously worked as a roofer. (Tr. 319, 326-32, 347-49, 1398, 1400).

## DISCUSSION

### I.     *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.  *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

4

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's

regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

    III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since June 15, 2011, the current SSI application filing date. (Tr. 1334). At step two, the ALJ found that plaintiff had the following severe impairments: (1) cardiomyopathy; (2) atrial fibrillation; (3) status post cardioversion; (4) degenerative disc disease of the lumbar and thoracic spine; (5) status post right ankle fusion; and (6) right ear hearing loss. (*Id.*). At step three, the ALJ determined that from the SSI application date of June 15, 2011 through December 31, 2016, plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 1336). Before proceeding to step four, the ALJ assessed that from June 15, 2011 through December 31, 2016 plaintiff had the following RFC:

> [T]he [plaintiff] had the residual functional capacity to perform less than the full range of sedentary work at defined in 20 CFR 416.967(a), because the [plaintiff] was able to lift, carry, push, and/or pull ten pounds occasionally and five pounds frequently, stand or walk for up to two hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday. The [plaintiff] needed to use a hand-held assistive device at all times when standing, with the result that the contralateral upper extremity was able to be used to lift and carry up to the above-listed exertional limitations. The [plaintiff] needed to be able to sit for up to five minutes after fifteen minutes of standing or walking, and he was unable to operate foot controls with his right lower extremity. Although the [plaintiff] was unable to balance, kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, he was able to occasionally stoop and climb ramps and stairs. The [plaintiff] was unable to tolerate exposure to excessive cold, excessive heat, excessive moisture/humidity, moderate (office) noise, and excessive vibration, while he needed to avoid concentrated exposure to pulmonary irritants such as odors, fumes, dust, gases, and poor ventilation. The [plaintiff] also needed to avoid exposure to workplace hazards such as unprotected heights and moving machinery. Although the [plaintiff] had no limitation in his ability to hear with is left ear, he was unable to hear with his right ear. The [plaintiff] was able to engage in

7

> work limited to simple, routine tasks that can be learned after a short demonstration or within thirty days. The [plaintiff] was able to engage in work with no production-rate or pace work, and he was able to engage in work that allowed a person to be off-task for five percent of an eight-hour workday, in addition to regularly scheduled breaks. The [plaintiff] was able to engage in work that did not require teamwork, such as on a production line.

(Tr. 1337-38).

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Steinbrenner to conclude that from June 15, 2011 through December 31, 2016 plaintiff was unable to perform past relevant work given the limitations set forth in his residual functional capacity. (Tr. 1345). The ALJ noted that if the plaintiff had the residual functional capacity to perform the full range of sedentary work during the above-referenced time period, a finding of "not disabled" would be directed. (Tr. 1346). However, the ALJ assessed that plaintiff's ability to perform sedentary work was compromised by additional limitations. (*Id.*) Proceeding to step five, and after considering testimony from VE Steinbrenner in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as ticket seller, telephone survey worker, and surveillance system monitor. (*Id.*). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from June 15, 2011 through December 31, 2016. (Tr. 1347-48).

The ALJ further assessed that beginning on January 1, 2017, plaintiff's impairments medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.960(c) and 416.966). (Tr. 1347). Based in part on the hearing testimony of ME Schosheim, the ALJ concluded that plaintiff's impairments medically equaled Listings 1.02 and 1.04 beginning on that date.

(*Id.*). Accordingly, the ALJ found that plaintiff was not disabled prior to January 1, 2017 but became disabled on that date and had continued to be disabled through May 8, 2019, the date of the decision. (Tr. 1348).

IV.  *Plaintiff's Challenges*

Plaintiff argues that the ALJ's evaluation of the medical expert's testimony lacked clear and substantial rationale for his rejection of a portion of the testimony.[4] (Dkt. No. 12-1, pgs. 19-27). The Court disagrees and finds that the ALJ's decision is supported by substantial evidence.

In deciding a disability claim, the ALJ must "evaluate every medical opinion he receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997) (citing 20 C.F.R. § 404.152(d)). Although an ALJ's conclusions may not "perfectly correspond" with any of the opinions of medical sources cited in his decision, he is entitled to weigh all of the evidence available to make findings that are consistent with the record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (in the context of RFC assessments) (citing *Perales*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). When the ALJ rejects the opinion of a treating source, the regulations direct the ALJ to "give good reasons" for the weight he gives plaintiff's treating source's opinion. *Ridosh v.*

---

[4] As can be expected from the complicated procedural history of this case, ALJ Baird's decision was lengthy and addressed numerous issues, as directed by prior remand. The decision herein discusses only the single issue raised by plaintiff in his moving papers as to whether substantial evidence supported the ALJ's evaluation of the medical expert's testimony.

9

*Berryhill*, 16-CV-6466, 2018 U.S. Dist. LEXIS 199661, at *12 (W.D.N.Y. Nov. 26, 2018) (citations omitted). "At the same time, 'the ALJ does not have to provide the same 'good reasons' evidence for not crediting a consulting doctor with sufficient weight.'" *Id*. While the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, he cannot simply selectively choose evidence in the record that supports his conclusions. *Gecevic v. Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995) (internal citations and quotations omitted).

At the April 3, 2019 hearing, ALJ Baird heard testimony of consulting medical expert Peter Schosheim, M.D., an orthopedist. (Tr. 1362-1444). Dr. Schosheim testified that he had reviewed the file regarding plaintiff's medical conditions and had sufficient objective medical and other evidence to provide an opinion about the nature of plaintiff's impairments during the relevant time. (Tr. 1369-70). Dr. Schosheim explained that, in rendering his opinion, he would be dividing the case into two separate time periods: (1) from the SSI application date of June 15, 2011 to January 1, 2017, and (2) from January 1, 2017 to the present. (Tr. 1370-73). He explained this division was necessary based on changes in plaintiff's impairments beginning in January 2017. (Tr. 1372, 1375). Dr. Schosheim's opinion was that prior to 2017 plaintiff did not meet or equal the relevant

listings of 1.04(a)-(c)[5] or 1.02(a)[6]. (Tr. 1373). Accordingly, he provided a detailed RFC assessment for that period. (*Id.*). He further explained that in 2017 plaintiff had worsening back pain and new medical findings of myelopathy in the thoracic spine and kyphosis, which caused him imbalance and weakness in his lower extremities and affected his ability to stand up straight and ambulate. (Tr. 1375-78). In July 2017, plaintiff underwent surgery for fusion of his thoracic spine. (Tr. 1375). With respect to plaintiff's foot and ankle impairments, Dr. Schosheim stated that plaintiff had a hindfoot deformity that, prior to 2017, did not meet the listings because it did not affect his ability to ambulate. However, after 2017, when plaintiff's thoracic spine issues worsened, plaintiff became unable to ambulate effectively and then equaled a listings-level condition based on the combination of spine and foot issues. (Tr. 1375-77).

---

[5] The Social Security Administration's Listing of Impairments – Adult Musculoskeletal Listing 1.04(a) provides: "1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) OR B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; OR C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. *See* https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_02.

[6] Social Security Administration Listing of Impairments – Adult Musculoskeletal Listing 1.02(a) provides: "1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; [...]." *See* https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_02.

During questioning by plaintiff's counsel at the hearing, Dr. Schosheim subsequently changed a portion of his testimony, opining that the plaintiff's impairments equaled Listings 1.04(a) and 1.02(a), in combination, as of January 1, 2013. (Tr. 1381). Shortly thereafter, Dr. Schosheim amended his testimony again and stated that plaintiff would have met Listing 1.02(b) as of January 2012. (Tr. 1383-84). These changes in his opinion were based on presentation of evidence from the record that plaintiff had joint fusion surgery on his hindfoot in July 2013, which was discussed by his treating providers as early as 2012. (Tr. 1380-81). Dr. Schosheim further stated that this surgery "would not affect plaintiff's ability to stand, but it will affect his ability to walk any distances without appropriate footwear, orthotics, and a cane." (Tr. 1382). When asked by the ALJ if this would have affected his ability to ambulate effectively at that time, as required to meet the subject listings, Dr. Schosheim gave an objectively unclear response and referred the question back to the ALJ to "deal with that specific aspect of the listing." (Tr. 1383).

In weighing the opinion evidence, the ALJ assessed that Dr. Schosheim's testimony regarding plaintiff's impairments medically equaling Listing 1.04(a) as of January 2017 was entitled "very significant weight." (Tr. 1347). However, the ALJ rejected Dr. Schosheim's testimony regarding the revisions to his initial testimony. (*Id.*).

The ALJ was entitled to give significant weight to parts of Dr. Schosheim's opinion and discount or reject other portions based on the record as a whole.[7] *See Citro v. Colvin*, 16-CV-6564, 2018 U.S. Dist. LEXIS 52146, at * 36-37 (S.D.N.Y. Mar. 28, 2018) ("The ALJ

---

[7] Plaintiff briefly argues that the ALJ erred by relying on his own lay opinion to make a determination contradictory to Dr. Schosheim's opinion. However, much of the caselaw cited by plaintiff is applicable to RFC analysis, not to decisions about whether an impairment met or equaled one the Listings. Further, the Court sees no evidence that the ALJ "substituted his own judgment for a competent medical opinion" in the manner disavowed in *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) and *Goldthrite v. Astrue*, 535 F. Supp. 2d 329, 339 (W.D.N.Y. 2008).

is not required to accept or reject a medical expert's opinion *in toto*; some portions of the opinion may be entitled to greater weight than other portion."); *Koppers v. Colvin*, 15-CV-0621, 2016 U.S. Dist. LEXIS 162755, at *12 (W.D.N.Y. Nov. 23, 2016) ("It is well settled that, in resolving the evidence, the ALJ is entitled to accept parts of a doctor's opinion and reject others."); *Fisher v. Colvin*, 5:14-CV-1498, 2016 U.S. Dist. LEXIS 41458, at *16-22 (N.D.N.Y. Mar. 11, 2016), *adopted by* 2016 U.S. Dist. LEXIS 40853 (N.D.N.Y. Mar. 29, 2016) (finding that the ALJ properly rejected portions of medical expert's opinion that were inconsistent with the record). Here, the ALJ provided sound reasoning as to why he gave weight to part of Dr. Schosheim's opinion but rejected the medical expert's revisions to his opinion about when plaintiff met or equaled a listings-level impairment. *See Younes v. Colvin*, 1:14-170, 2015 U.S. Dist. LEXIS 43990, at *27 (N.D.N.Y. Mar. 13, 2015), *adopted by* 2015 U.S. Dist. LEXIS 43471 (N.D.N.Y. Apr. 2, 2015) (explaining that there is no "absolute bar" to crediting only portions of medical source opinions, so long as the ALJ has a sound reason for doing so). The ALJ gave several explanations for this determination. For the portions of the opinion he credited, he explained that they were consistent with the overall record, including radiology reports and plaintiff's surgery. However, he observed that the finding of a listings-level impairment in 2012 or 2013 was not consistent with the medical evidence in the record. For example, he cited that a foot surgeon returned plaintiff to work with no restrictions at that time, and that there was no evidence of nerve root compression, sensory or reflex loss, positive straight leg raising tests, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively prior to 2017. (Tr. 1337, 1347). He further stated that plaintiff's activities of daily living during this period, such as gardening, yard work, and shoveling snow, contradicted

13

plaintiff's claims of extreme limitation to his ability to walk. (*Id.*). The ALJ also stated that he discounted Dr. Schosheim's "quick revisions" to his testimony, suggesting that multiple changes to the impairment dates while being examined by plaintiff's counsel lessened the certainty or reliability of Dr. Schosheim's opinion on those points. (Tr. 1347). Although plaintiff objects to the ALJ's reference to the doctor's "quick revisions," he cites no law holding that revisions to an ME's opinion are not an allowable consideration for the ALJ to make when considering the opinion evidence. Moreover, the ALJ supported his weighing of Dr. Schosheim's amended opinion with more than just an explanation that the revision was made quickly, or even hastily. Both the medical evidence and Dr. Schosheim's testimony supported a finding that plaintiff's combination of back and foot impairments markedly deteriorated in 2017, and not before. The ALJ was permitted to conclude that Dr. Schosheim's testimony was internally inconsistent in that regard. Even though plaintiff did undergo ankle fusion surgery in 2013, the evidence showed that plaintiff's ankle impairment did not result in an inability for him to ambulate effectively at that time, and therefore, did not meet Listing 1.02(a). Thus, substantial evidence supported the ALJ's decision not to adopt portions of Dr. Schosheim's opinions. *See Pellam v. Astrue*, 508 Fed. Appx. 87, 90 (2d Cir. 2013) (summary order) (finding no error where ALJ rejected consultative examiner's conclusions where the doctor's findings were inconsistent with medical records of treating physicians, based on only one limited examination of the plaintiff occurred, and the conclusions were vague).

The ALJ was well within his duty to reconcile the conflicting evidence and determine that the plaintiff's impairments, or combination of impairments, did not meet or equal a listing prior to January 1, 2017. An ALJ "is not required to articulate specific

evidence supporting [the ALJ's] finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment does not medically equal a listed impairment constitutes sufficient articulation for this finding." See SSR 17-2p, 2017 SSR LEXIS 2, at 10-11 (Mar. 27, 2017). Plaintiff is entitled to know why the ALJ chose to disregard the portions of the medical opinion that was beneficial to his applications for benefits, and he has been provided such an explanation. C.f. Dioguardi v. Comm'r Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006).

In sum the Court finds that ALJ Baird appropriately evaluated the testimony of Dr. Schosheim. Further, his determination that plaintiff was not under a disability from the date of his application to December 31, 2016 was based on proper application of the law and is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied and Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   March 29, 2021
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge